## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**EDF RESOURCE CAPITAL, INC.**

     **Plaintiff,**

     v.

**UNITED STATES SMALL BUSINESS
ADMINISTRATION, et al.**

     **Defendants.**

Civil Action No.  12-2043 (JDB)

## MEMORANDUM OPINION

Plaintiff EDF REsource Capital, Inc. ("EDF") seeks a temporary restraining order

("TRO") and a preliminary injunction against the U.S. Small Business Administration and Karen

Mills, Administrator of SBA (collectively "defendants" or "SBA") enjoining defendants from

enforcing their December 17, 2012 final agency decision revoking EDF's authority to participate

in SBA's 504 loan program and permanently transferring EDF's loan portfolio to an agent for

SBA.  A hearing on the TRO was held on this date, and, upon consideration of the submissions

by the parties and the parties' arguments, and for the reasons explained below, the temporary

restraining order will be denied.

## BACKGROUND

The facts and circumstances under which this case arose are briefly stated here.  On

February 18, 2011, SBA served EDF with a notice of proposed revocation and the proposed

transfer of its loan portfolio.  After nearly two years of investigation, correspondence, and

submissions between EDF and SBA, SBA issued a final agency decision on December 17, 2012

revoking EDF's authority to participate in SBA's 504 loan program; transferring EDF's loan

portfolio and all pending 504 loan applications to an agent for SBA; and ordering SBA's Central

Servicing Agent to withhold from EDF all fees received and/or due and payable to SBA.  Final

Agency Decision at 1-2. The decision was effective immediately. Id. at 2.  In support of its

decision, SBA concluded that EDF had failed (1) to establish and adequately maintain the

required loan loss reserve fund; (2) to pay invoiced obligations to SBA in a timely manner; and

(3) to comply with SBA's loan program requirement that it maintain financial solvency to operate

under the applicable regulations.  Id. at 5.  SBA concluded that these grounds, "either

individually or in the aggregate," were sufficient to support the final decision.  Id.  EDF

challenges these conclusions, and seeks a TRO and injunctive relief to prevent the decision from

being effectuated.  EDF also seeks discovery, claiming that SBA's motive for investigating and

issuing the final decision was based on bias or personal animus against EDF's CEO, Frank

Dinsmore.  EDF's Mem. in Supp. of Mot. for Expedited Disc. [ECF 4-1] at 1.

## ANALYSIS

The standard for issuance of the "extraordinary and drastic remedy" of a temporary

restraining order or preliminary injunction is by now well-established.  Munaf v. Geren, 553 U.S.

674, 689 (2007).  To prevail on a motion for a temporary restraining order or preliminary

injunction, the moving party must demonstrate:  (1) a substantial likelihood of success on the

merits; (2) that the moving party would suffer irreparable injury if the relief were not granted; (3)

that the balance of equities tips in the movant's favor; and (4) that an injunction is in the public

interest.  See Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir.

2006) (citing <u>Mova Pharm. Corp. v. Shalala</u>, 140 F.3d 1060, 1066 (D.C. Cir. 1998)); <u>see also</u>

<u>Winter v. NRDC, Inc.</u>, 555 U.S. 7, 20 (2008).  "The likelihood of success requirement is the most

important of these factors."  <u>See</u> <u>Apotex, Inc. v. Sebelius</u>, 700 F. Supp. 2d 138, 140 (D.D.C.

2010).  This is because "[w]ithout any probability of prevailing on the merits, the Plaintiffs'

purported injuries, no matter how compelling, do not justify preliminary injunctive relief."  <u>Id.</u>

(quoting <u>Am. Bankers Ass'n v. Nat'l Credit Union Admin.</u>, 38 F. Supp. 2d 114, 140 (D.D.C.

1999)); <u>see also</u> <u>Trudeau v. Fed. Trade Comm'n</u>, 456 F.3d 178, 182 n.2 (D.C. Cir. 2006) (citing

previous instances where denials of preliminary injunctions have been affirmed where district

courts have concluded that a plaintiff had no likelihood of success on the merits).  Indeed, the

Supreme Court has observed that "a party seeking a preliminary injunction <u>must demonstrate</u>,

among other things, "a likelihood of success on the merits." <u>Munaf</u>, 553 U.S. at 689 (quoting

<u>Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal</u>, 546 U.S. 418, 428 (2006))

(emphasis supplied).

      EDF has failed to satisfy its burden of demonstrating that it is entitled to a TRO.

The Court assumes – and SBA does not seriously contest – that EDF would suffer irreparable

harm absent entry of a TRO.  But EDF has not demonstrated a substantial likelihood of success

on the merits.  EDF raises a claim under the Administrative Procedure Act, attacking SBA's

decision as arbitrary and capricious.  The bases it cites for that conclusion are: (1) a purported

lack of due process because of SBA's failure to conduct a pre-termination evidentiary hearing; (2)

a challenge to SBA's conclusion that EDF failed to satisfy its loan loss reserve requirements and

that EDF owes money to SBA; and (3) improper bias on the part of SBA, based on claims that

SBA personnel had personal animus against EDF's CEO Frank Dinsmore.

I.      **Due Process**

The "fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (internal citation omitted); see also Propert v. District of Columbia, 948 F.2d 1327, 1331 (D.C. Cir. 1991) (stating the three basic elements to a procedural due process claim as (1) a deprivation, (2) of life, liberty, or property, (3) without due process of law).  However, due process is not a concept that is "unrelated to time, place and circumstances" but instead is "flexible and calls for such procedural protections as the particular situation demands." Mathews, 424 U.S. at 334.  In considering a due process challenge, "[t]he first inquiry . . . is whether the plaintiff has been deprived of a protected interest in 'liberty' or 'property.'" Amer. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 59 (1999) (citations omitted).  Assuming that the movant has a property interest, courts then apply the familiar balancing test under Mathews v. Eldridge, considering (1) the significance of the private party's protected interest, (2) the government's interest, and (3) the risk of erroneous deprivation and "the probable value, if any, of additional or substitute procedural safeguards."  424 U.S. at 335.

Based on the Court's preliminary assessment, it appears that EDF has a significant property interest at stake here.  Indeed, EDF has represented, and SBA concedes, that EDF's entire business is premised on its status as a certified development company ("CDC"), which makes 504 loans available to small businesses.

However, EDF has not made a persuasive case that a pre-termination evidentiary hearing is necessary here to avoid the risk of erroneous deprivation, or explained what probative value a pre-termination evidentiary hearing would offer, in light of the thorough response by SBA in its

4

82-page administrative decision addressing EDF's failure to maintain adequate loan loss reserves, to pay forward obligations owed to SBA, and to maintain financial solvency.  These appear to be issues that can adequately be resolved through paper submissions, which EDF certainly availed itself of through the nearly 200 pages it submitted to SBA throughout the course of a twenty-two month investigation.  Based on the record, it appears that EDF received plenty of opportunities to challenge the proposed revocation and transfer, going as far back as February 2011.  It submitted voluminous responses to SBA and met with SBA officials since that time.  Based on that robust exchange between EDF and SBA over a period of twenty-two months, it appears that EDF received both ample notice of the proposed revocation and transfer of its loan portfolio and a meaningful opportunity to be heard.  See, e.g., Pinnacle Armor, Inc. v. United States, 648 F.3d 708, 717 (9th Cir. 2011).  On the final Mathews factor, SBA has not made a particularly strong showing that it would be burdened by a pre-termination hearing requirement.  But because of the sufficiency of process afforded EDF through its paper submissions and meetings in this case, the Court does not conclude at this time that due process required a pre-termination hearing.

Finally, as to the issue of bias, at this juncture EDF has not put forward enough evidence to warrant a pre-termination hearing on that point. See, e.g., Bender v. Dudas, No. 04-1301, 2006 WL 89831, at *15 (D.D.C. Jan. 13, 2006) ("Where a violation of due process resulting from bias is alleged, the complaining party bears the burden of showing 'a risk of actual bias or prejudgment' and must 'overcome the presumption of honesty and integrity in those serving as adjudicators.'" (quoting Withrow v. Larkin, 421 U.S. 35, 47 (1975))).

## II.    Loan Loss Reserve Requirements, Loss Share Requirements, and Financial Solvency

On the three main substantive bases for SBA's final decision, EDF also fails to show a

5

substantial likelihood of success in demonstrating that SBA's decision to revoke EDF's authority

to participate in the 504 loan program and transfer EDF's loan portfolio was arbitrary and

capricious.  EDF challenges SBA's conclusion that EDF failed to satisfy the loan loss reserve

requirements; that it failed to pay SBA money owed under its loss share obligations; and that,

relatedly, EDF was financially unable to maintain its participation in SBA's loan program.  Based

on the representations at the hearing and its submissions, EDF has suggested that it does not

believe it was subject to <u>any</u> loan loss reserve requirement because the alternative loan loss

reserve program, which allowed certain PCLP CDCs to utilize a risk-based methodology as

opposed to the "standard" methodology (which directed PCLP CDCs to maintain a loan loss

reserve fund requirement of 1% of each loan), expired in 2006.  Although there is some

uncertainty whether the pilot program allowing for participation in an alternative loan loss

reserve program (allowing CDCs to set aside less than the standard 1% of a loan amount) expired

in 2011 (as SBA contends) or 2006 (as EDF claims), the statutory regime does not appear to

support EDF's contention that it was subject to <u>no</u> loss reserve requirement at all.  <u>See generally</u>

15 U.S.C. § 697e; 13 C.F.R. § 120.847(a) ("PCLP CDCs must establish and maintain a [Loan

Loss Reserve Fund]").  The final agency decision points to EDF's own actions, which seem to

suggest that EDF at least understood, post-2006, that there was a loan loss reserve requirement,

and discusses EDF's obligation to maintain an adequate loan loss reserve.  <u>See</u> Final Agency

Decision at 12-23.  At this stage, the Court cannot conclude that EDF is likely to succeed on this

challenge.

Additionally, although EDF now challenges its loss share requirements, again, the statute

referenced by the parties governing PCLP CDCs provides for either a 10% or a 15% loss sharing

arrangement.  See 15 U.S.C. § 697e(b)(2)(C) (allowing for designation of a CDC as eligible to

participate in the PCLP "if the company agrees to assume and to reimburse the [SBA] for 10

percent of any loss sustained by the [SBA] . . . 15 percent in the case of any such loss attributable

. . . [under the alternative loan loss reserve program]").  Under either percentage, EDF has a

substantial loss share obligation that it has not met and does not currently have the funds to meet.

Moreover, as SBA noted at the hearing, and stated in its final agency decision, EDF nevertheless

paid the initial invoices charging the 15% obligation on several loan losses. See Final Agency

Decision at 26-28.  That supports the conclusion that EDF had that obligation and knew it.

Whether the loan loss reserve requirement was calculated under the "alternative" loan loss

reserve program, the "standard" program, or a hybrid of the two, EDF nevertheless conceded at

the hearing that, under either the "standard" or "alternative" loan loss reserve regime, it would not

have sufficient funds to satisfy the loan loss reserve requirement. Nor, as explained above, and

found by the SBA, does it appear that EDF can meet its loss share requirement due to SBA.

Having insufficient funds to satisfy the loss reserve requirement and the loss share payments due

to SBA, it would appear that EDF would be, as the SBA found, financially insolvent.

Accordingly, EDF has not demonstrated that it would likely succeed on the merits of showing

that SBA acted arbitrarily or capriciously in relying on any of the three justifications that SBA

contends separately, or in the aggregate, are sufficient to sustain its final agency decision.

## III.    Remaining Factors

As to the remaining factors regarding the public interest, and the balance of equities, EDF

similarly fails to establish that these factors support its TRO request.  Here, although EDF points

to the services it provides small businesses, the loan portfolio will be transferred to an SBA

7

agent, and will continue to be serviced and administered accordingly.  <u>See, e.g.</u>, <u>Elk Assocs.</u>
<u>Funding Corp. v. U.S. Small Bus. Admin.</u>, 858 F. Supp. 2d 1, 32 & n.29 (denying TRO because
irreparable harm suffered by private entity was outweighed by the public interest since SBA's
holding of outstanding debentures "represent public monies that have been extended to . . . a
private entity, with the ultimate aim not of encouraging [its] growth but rather the growth of
small business generally") (internal quotations omitted).

**IV.    Discovery**

Finally, the Court will deny EDF's motion for discovery.  Absent "evidence that the
agency has given a false reason . . . discovery is inappropriate in cases under the APA."  <u>See</u> <u>Nat'l</u>
<u>Treas. Emps. Union v. Seidman</u>, 786 F. Supp. 1041, 1046 (D.D.C. 1992).  Although EDF alludes
to bias by SBA against Dinsmore as a motive for SBA's final agency decision, the record
currently before the Court is not persuasive on this point.  Even if the Court permitted discovery,
it is doubtful that such an endeavor would garner additional facts that would help to decide
whether the agency action – and its stated rationale – was arbitrary and capricious, given the
deferential review accorded under the APA. <u>See</u> <u>Camp v. Pitts</u>, 411 U.S. 138, 142 (1973) ("[T]he
focal point for judicial review should be the administrative record already in existence, not some
new record made initially in the reviewing court."); <u>Seidman</u>, 786 F. Supp. at 1046 n.11 ("The
Court may not substitute its judgment for that of the decision-making agency.") (citing <u>Motor</u>
<u>Vehicle Mfrs. Assoc. of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29, 43 (1983)).
Hence, the Court will deny discovery, and will set in place a briefing schedule on the preliminary
injunction motion.

**CONCLUSION**

For the foregoing reasons, the Court will deny EDF's request for a TRO, deny EDF's motion for discovery, and set a briefing schedule for the preliminary injunction motion. The Court is mindful of the impact the denial of a TRO may have on EDF's continued viability. Nevertheless, in considering the relevant factors, and, in particular, EDF's likelihood of success on the merits of its challenge to the final agency decision, the Court determines that a TRO is unwarranted. A separate order accompanies this memorandum opinion.


_____/s/_____
JOHN D. BATES
United States District Judge


Date: <u>December 21, 2012</u>